Battle, J.
 

 The authority upon which his Honor proceeded, in giving the judgment from which the appeal is taken, is to be found in the 48th section of the 111th chapter of the Revised Statutes. That section provides, that
 
 u
 
 when a slave shall
 
 *7
 
 be apprehended for any offence, the punishment whereof may affect life, member or limb, it shall be the duty of the Sheriff, and he is hereby required, to serve the owner of such slave, if known, with notice of the trial, ten days previous thereto, (which notice shall be proved to the Court) in order that the owner may have an opportunity of defending said slave;” and it then goes on to declare, that all costs attending the trial of such slave shall, in case of his conviction, be paid by the owner or owners. His Honor must have supposed that the temporary hirer was the owner, within the meaning of the Statute, and in that, we think he erred. We are not aware of any adjudication upon the point, but upon a proper construction of the Act, we think the permanent owner, and not the mere hirer for a year, was the person intended. There can be no doubt that the owner, who is to pay tire costs in case the slave be convicted, is the same person upon ■whom the notice of trial is directed to be served. Upon whom then, is that to be
 
 1
 
 Certainly the one who has the greatest interest in the life, member or limb of the slave who is about to be tried. The very reason given in the Statute, for ordering a notice to he served, shows that the Legislature desired to act with justice to him whose property might be affected by the result of the trial, and with humanity towards the slave, whose life or limbs might be in jeopardy. Such being the manifest object of the Legislature, it is reasonable to suppose that it intended to notify the person who would most probably attend to the monition, and not one whose interest in the slave would be so slight that he would most likely be unwilling to incur the trouble and expense of a defence. That this is a proper construction of the enactment in question, is more clearly shown by a reference to other sections in the same chapter, and to the sections 75, 79, and 84 of the 34th chapter of the Revised Statutes. In the 19th and 45th sections, the former of which points out the mode by which the proceeds of the sale of a runaway slave may be recovered, and the latter prescribes that in the County and Superior Courts, a slave shall be entitled to trial by a jury of freeholders, who shall also be slave owners, it is obvious that none but permanent owners were meant, and, therefore, no other word than
 
 u
 
 owners ” was used to describe them. But in the 26th section, where the policy
 
 *8
 
 was to make any person who had slaves in his employment liable for their depredations, if they were not well clothed and fed, the words “master, owner, or possessor,” are employed. So, in the enactments relative to trafficking with slaves, and sending slaves to hunt in the woods with a gun in the night, by firelight, the terms used are, respectively, “ owner or manager,” ch. 34, sec.
 
 75
 
 — “owner, overseer or employer,” same ch., sec. 78 — and “ master or the person in whose service tire slave may be,”, same ch., sec. 84. Thus we see then, when the Legislature intended to embrace, in any enactment, persons other than the absolute owners, having slaves in- their service or employment, it used suitable words to designate them, and to distinguish them from such owners. We think then, that the conclusion is a fair one, that when tire term “owners” only is used, it means the absolute owners in contradistinction to the mere hirers or temporary owners.
 

 In coming to this conclusion, we have not overlooked the case of the
 
 State
 
 v. Mann, 2 Dev. Rep. 263, referred to by the Attorney General. That case decided, only that one who has a right to the labor of a slave, has also the right to all the means of controlling his conduct, which the owner has; and like the owner, cannot be indicted for a mere battery upon him. That principle no more entitles the hirer to all the rights, and imposes upon him all the responsibilities of the owner, than does the principle which malees a schoolmaster stand, in some respects,
 
 in loco
 
 parentis, make him so stand in all respects.
 

 The judgment against Wagstaff must be reversed, which must be certified to the Superior Court of law for the county of Cas-well, in order that that Court may prpceed to give judgment for the costs of the prosecution of Levi, against his owner George Williamson.
 

 Per Curiam. Judgment reversed, and ordered accordingly.